HULETT HARPER STEWART LLP
KIRK B. HULETT, SBN: 110726
550 West C Street, Suite 1500
San Diego, CA 92101
Telephone:   (619) 338-1133
Facsimile:   (619) 338-1139

NICHOLAS & TOMASEVIC, LLP
ALEX TOMASEVIC, SBN: 245598
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone:   (619) 325-0492
Facsimile:   (619) 325-0496
Email: atomasevic@nicholaslaw.org

McCOLLOCH LAW FIRM
MICHAEL T. McCOLLOCH, SBN: 66766
545 2nd Street, Suite 3
Encinitas, CA 92024
Telephone:   (760) 632-1100
Facsimile:   (760) 650-0016
Email: mike@moonlightlaw.com

Attorneys for Plaintiff, William L.
Grivas, Sr.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L. GRIVAS, Sr., On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METAGENICS, INC.,<br><br>Defendant. | CASE NO. 15-cv-1838<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE SECTIONS 17200, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff William L. Grivas, Sr., by and through his attorneys, brings this action on behalf of himself, and all others similarly-situated against Defendant Metagenics, Inc.  Plaintiff alleges, on information and belief, except for information based on personal knowledge, as follows:

## NATURE OF THE ACTION

1.      Metagenics, Inc. touts itself as a "nutrigenomics" and "lifestyle medicine" company that manufactures, markets, and sells a number of high-priced non-prescription consumable products or foods allegedly designed to treat a number of chronic health conditions.  Metagenics's tag line is "Genetic Potential Through Nutrition."  A big part of Metagenics's business is its sale of so-called "medical foods" which it sells as non-prescription powdered beverages or ready-to-eat food bars.

2.      Metagenics knows that about 84 million people in this country suffer from some form of cardiovascular disease.[1]  Metagenics also knows that another 29 million Americans have diabetes.[2]  To capitalize on that large customer base, Metagenics markets and sells its so-called "medical food" to treat and correct "cardiovascular disease," "glucose control," "metabolic syndrome," "compromised gut function," and a host of maladies.  Metagenics falsely labels such products – some of which cost $150 or more per container – as "medical food" knowing that such labeling carries a meaning to its customers and allows it to target a specific market, and that such a label allows for a much higher price when compared to, for example, ordinary foods or dietary "supplements."

3.      This strategy has worked for Metagenics.  Upon information and belief, Metagenics enjoyed sales of at least $300 million in 2015.  Metagenics's sales and growth were so strong that it attracted a significant investment from

---

[1]     *See* http://www.hopkinsmedicine.org/healthlibrary/conditions/cardiovascular_diseases/cardiovascular_disease_statistics_85,P00243/ (last accessed Sept. 18, 2015).

[2]     *See* http://www.cdc.gov/diabetes/data/statistics/2014statisticsreport.html (last accessed Sept. 18, 2015).

1  Alticor, Inc., the multi-billion dollar enterprise responsible for the Amway® brand,

2  which purchased a controlling stake in Metagenics in late 2009.

3      4.      These lofty sales were largely achieved however by false labeling of

4  its products as "medical food."  Metagenics's "medical food" label is false and

5  deceptive as a matter of California law.  Specifically, California's Sherman Food,

6  Drug, and Cosmetic Law specifically defines and regulates the use of the term

7  "medical food."  Actual "medical foods" are specially formulated to be consumed

8  or administered enterally under the supervision of a physician and are intended for

9  the dietary management of a specific disease or condition.  Metagenics's products

10 labeled as "medical food" uniformly *do not, however,* meet California's definition

11 of "medical food." Rather, Metagenics mass-produces general, not specific, recipes

12 that it hopes to sell to as many people as possible, with or without physician

13 involvement.  In short, Metagenics is deceiving people when it tells them that their

14 products are indeed specialized "medical food."

15     5.      Plaintiff William L. Grivas, Sr., a purchaser of Metagenics's alleged

16 "medical foods," seeks monetary recovery and to otherwise hold Metagenics

17 accountable for its continued and knowing deception.  Mr. Grivas brings this case

18 on behalf of himself and all similarly-situated purchasers of Metagenics's "medical

19 foods."

20                      **JURISDICTION AND VENUE**

21     6.      This Court has original jurisdiction pursuant to 28 U.S.C.

22 § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds

23 the sum or value of $5,000,000 and is a class action in which members of the class

24 of plaintiffs are citizens of states different from Metagenics.  Further, based on

25 information and belief, greater than two-thirds of the class members reside in states

26 other than the state in which Metagenics is a citizen (California).

27     7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that

28 many of the acts and transactions giving rise to this action occurred in this district

2

1    and because Defendant:

2              (a)    is authorized to conduct business in this district and has

3    intentionally availed itself of the laws and markets within this district through the

4    promotion, marketing, distribution and sale of its products in this district;

5              (b)    does substantial business in this district;

6              (c)    maintains its headquarters in this district; and

7              (d)    is subject to personal jurisdiction in this district.

8                                          **PARTIES**

9         8.    At all times relevant to this matter, Plaintiff resided and continues to

10   reside in the state of California.  During the class period, Plaintiff was exposed to and

11   saw Metagenics's claims by reading the Metagenics "medical food" label.  Plaintiff

12   purchased Metagenics "medical food" in reliance on these claims, and suffered injury

13   in fact and lost money as a result of the unfair competition described here.

14        9.    Defendant Metagenics is a global nutrigenomics and lifestyle

15   medicine company headquartered in this District in Aliso Viejo, California.

16   Defendant makes all major policy decisions, including advertising, labelling, and

17   marketing decisions, from its Orange County, California headquarters, for all sales

18   nationwide such that it can and does reasonably expect that it must comply with

19   California law in its sales nationwide.

20                    **ADDITIONAL FACTUAL ALLEGATIONS**

21   **What "Medical Foods" are Supposed to Be**

22        10.   According to California's Sherman Food, Drug and Cosmetic Act,

23   a"medical food" is:

24         a food which is formulated to be consumed or administered internally

25         under the supervision of a physician and which is intended for the

26         specific dietary management of a disease or condition for which

27         distinctive nutritional requirements, based on recognized scientific

28         principles, are established by medical evaluation.

3

Cal. Health & Safety Code §§ 110100 and 109971; 21 U.S.C. § 360ee(b)(3) (incorporated by Section 110100).

11.     The following criteria clarify the definition of a true medical food. Specifically, a food is a medical food only if it fits the above definition and:

(i)     It is a specially formulated and processed product (as opposed to a naturally occurring foodstuff used in its natural state) for the partial or exclusive feeding of a patient by means of oral intake or enteral feeding by tube;

(ii)    It is intended for the dietary management of a patient who, because of therapeutic or chronic medical needs, has limited or impaired capacity to ingest, digest, absorb, or metabolize ordinary foodstuffs or certain nutrients, or who has other special medically determined nutrient requirements, the dietary management of which cannot be achieved by the modification of the normal diet alone;

(iii)   It provides nutritional support specifically modified for the management of the unique nutrient needs that result from the specific disease or condition, as determined by medical evaluation;

(iv)    It is intended to be used under medical supervision; and

(v)     It is intended only for a patient receiving active and ongoing medical supervision wherein the patient requires medical care on a recurring basis for, among other things, instructions on the use of the medical food.

Cal. Health & Safety Code § 110100; 21 C.F.R § 101.9(j)(8) (incorporated by Section 110100).

12.     Medical foods were intended, primarily, for use as a life support modality in the management of the critically ill or elderly.  Their definition is meant to be narrowly construed.

1 **<u>Metagenics Falsely Labels Product as "Medical Foods"</u>**

2     13.     Defendant Metagenics sells a whole line of products falsely labeled

3 as "medical foods."   Metagenics sells at least 17 varieties of so-called "medical

4 foods" ranging in prices of up to $159 per container or "kit."

5     14.     Every one of Metagenics's "medical foods" prominently and

6 uniformly lists the phrase "Medical Food" on the front of every product label, as

7 well as in marketing materials such as those found on the Metagenics website.

8     15.     For example, the product packaging for one of Metagenics's more

9 popular "medical food" products, UltraMeal®, looks substantially like:



23     16.     These products, however, do not meet California's statutory

24 definition of "medical food" and Metagenics's use of that term on its product

25 packaging and marketing materials is materially false and deceptive.

26     17.     First, Metagenics's "medical foods" are *not* specially formulated for

27 a particular patient, or for a particular health condition, as true medical foods are

28 supposed to be.  Rather, Metagenics, as a matter of policy and general practice,

mass produces and sells its "medical foods" to anyone and these foods are made up of ordinary or naturally-occurring ingredients such as soy, fructose, olive oil, and riboflavin.  Metagenics's "medical foods," in short, are ordinary mass-produced foods or, at most, dietary supplements, and *not* medical foods.

18.     Second, Metagenics's "medical foods" are not designed for administration exclusively through a physician, as the law requires of true medical foods.  Rather, Metagenics's "medical foods" are available to anyone over the internet including through Amazon.com as a matter of company policy.  *See, e.g.,* http://www.amazon.com/Metagenics/b/ref=bl_dp_s_web_3035402011?ie=UTF8& node=3035402011&field-lbr_brands_browse-bin=Metagenics (Metagenics product page).

19.     Third, and again unlike actual medical foods, Metagenics does not limit sales of its products to those with "limited or impaired capacity to ingest, digest, absorb, or metabolize ordinary foodstuffs or certain nutrients, or who has other special medically determined nutrient requirements, the dietary management of which cannot be achieved by the modification of the normal diet alone." Metagenics, in short, will sell to anyone as a matter of policy.

20.     Metagenics's labeling is also false and misleading because the diseases and conditions for which Metagenics claims its medical foods products treat are diseases and conditions that can be *managed by a normal diet alone,* thus eliminating any legitimate claims that Metagenics's products are "medical foods."

21.     For the above and other reasons, the Food and Drug Administration (FDA) has expressly censured Metagenics for mislabeling its products as "medical foods."[3]   The FDA has called Metagenics's products "misbranded" and their product labels "false and misleading in that the products are labeled and marketed as medical foods but do not meet the statutory definition of a medical food. . . ."

---

[3]  The federal definition of "medical food" is the same as California's.

California adopted the same definition of "medical food" as that defined by the FDA.  Metagenics was instructed by the FDA to take "prompt action to correct the violations."  The FDA, furthermore, has informed Metagenics of its violations on at least two occasions.

22.     While Metagenics responded by taking the "medical food" label off several of its products, it continued, and continues to this day, to label at least 17 different products with the erroneous "medical food" label.  Metagenics has never disclosed to its customers that, although it purports to sell "medical foods," that the FDA has found that Metagenics's products *do not* meet state and federal criteria for medical foods.

23.     During the class period, Plaintiff William L. Grivas, Sr. purchased one or more Metagenics "medical foods."  Mr. Grivas did so after being exposed to and relying on Metagenics's false advertising and designation of their products as "medical foods."   Mr. Grivas lost money and was damaged as a result of Metagenics's deception.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  The proposed Class consists of:

All persons who at any time through the date of class certification purchased Metagenics "medical foods." Excluded from the Class are Defendant's officers, directors and employees of Metagenics and those who purchased Metagenics "medical foods" for the purpose of resale.

25.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants,

partners, joint venturers, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

26. **Numerosity**.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

27. **Existence and Predominance of Common Questions of Law and Fact**.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a) whether Metagenics's "medical food" line of products meets the statutory definitions of medical foods;

(b) whether the claims discussed above are misleading, or reasonably likely to deceive;

(c) whether Metagenics's alleged conduct violates public policy;

(d) whether the alleged conduct constitutes violations of the laws asserted here;

(e) whether Metagenics engaged in false or misleading advertising;

(f) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and/or

(g) whether Plaintiff and Class members are entitled to relief.

28. **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Class in that the Defendant was unjustly enriched as a result of Plaintiff's and the Class' respective purchases of Metagenics "medical foods."

29.     ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

30.     ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

31.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their

1   interests; and/or

2          (c)    Defendant has acted or refused to act on grounds generally

3   applicable to the Class thereby making appropriate final declaratory relief with

4   respect to the members of the Class as a whole.

5          32.    Unless stated otherwise, the claims asserted herein are applicable to

6   all persons who purchased Metagenics "medical foods."

7          33.    Adequate notice can be given to Class members directly using

8   information maintained in Defendant's records or through notice by publication.

9          34.    Damages or restitution may be calculated, in part, from the sales

10  information maintained in Defendant's records, so that the cost of administering a

11  recovery for the Class can be minimized.  However, the precise amount of damages

12  available to Plaintiff and the other members of the Class is not a barrier to class

13  certification.

14         35.    Unless a class is certified, Defendant will retain monies received as

15  a result of its conduct that was taken from Plaintiff and proposed Class members.

16                              <u>COUNT I</u>

17
    **Unlawful Business Acts and Practices in Violation of California**
18  **Business & Professions Code Sections 17200, *et seq*.,**
    **<u>on Behalf of Plaintiff and the Class</u>**
19

20         36.    Plaintiff repeats and re-alleges the allegations contained in the

21  paragraphs above, as if fully set forth here.

22         37.    Business & Professions Code § 17200 prohibits any "unlawful,

23  unfair or fraudulent business act or practice and unfair, deceptive, untrue or

24  misleading advertising."  For the reasons discussed above, Metagenics has violated

25  each of these provisions of Business & Professions Code § 17200.

26         38.    Metagenics has violated § 17200's prohibition against engaging in

27  unlawful acts and practices by, *inter alia*, making the representations and omissions

28  of material facts, as set forth more fully here, and violating Civil Code §§ 1572,

                                    10

1573, 1709, 1710, 1711, 1770, Business & Professions Code §§ 17200, *et seq.*, and California's Sherman Food, Drug, and Cosmetic Law (incl. Health & Safety Code §§ 110100, 110765), by misbranding food, Metagenics "medical foods," in violation of state law, and by violating the common law.

39.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

40.     Metagenics's acts, omissions, misrepresentations, practices, and non-disclosures as alleged here also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

41.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states resulting in harm to consumers.  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq.*

42.     There were reasonably available alternatives to further Metagenics's legitimate business interests, other than the conduct described here.

43.     Metagenics's claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

44.     Metagenics's labeling, website and other advertisements, as described herein, also constitutes unfair, deceptive, untrue, and misleading advertising.

1    45.    Metagenics's conduct caused and continues to cause substantial

2  injury to Plaintiff and the other Class members.  Plaintiff has suffered injury in fact

3  and has lost money as a result of Metagenics's unfair conduct.

4    46.    Metagenics has thus engaged in unlawful, unfair, and fraudulent

5  business acts and practices and false advertising, entitling Plaintiff to judgment and

6  equitable relief against Defendants, as set forth in the Prayer for Relief.

7                        **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiff prays for a judgment:

9    A.    Certifying the Class as requested here;

10    B.    Awarding restitution and/or disgorgement of Metagenics's revenues

11  to Plaintiff and the proposed Class members, and any other equitable relief afforded

12  by the Business and Professions Code;

13    C.    Awarding attorneys' fees and costs; and

14    D.    Providing such further relief as may be just and proper.

15                           **JURY DEMAND**

16    Plaintiff demands a trial by jury on all issues so triable.

17  DATED: November 9, 2015          HULETT HARPER STEWART LLP
                                     KIRK B. HULETT
18

19

20                                    */s/ Kirk B. Hulett*
                                     KIRK B. HULETT
21

22                                   550 West C Street, Suite 1500
                                     San Diego, CA  92101
23                                   Telephone:  (619) 338-1133
                                     Facsimile:   (619) 338-1139
24                                   Email:        kbh@hulettharper.com

25

26

27

28

                                    12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NICHOLAS & TOMASEVIC, LLP
ALEX TOMASEVIC, SBN: 245598
225 Broadway, 19th Floor
San Diego, CA  92101
Telephone:   (619) 325-0492
Facsimile:    (619) 325-0496
Email:         atomasevic@nicholaslaw.org

McCOLLOCH LAW FIRM
MICHAEL T. McCOLLOCH, SBN: 66766
545 2nd Street, Suite 3
Encinitas, CA 92024
Telephone:   (760) 632-1100
Facsimile:    (760) 650-0016
Email:         mike@moonlightlaw.com

Attorneys for Plaintiff, William L. Grivas, Sr.